UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JEROME GEE,

     Petitioner,

v.                                  Case No.  4:16cv211-MW-CJK

FLORIDA DEPARTMENT OF
CORRECTIONS SECRETARY,

     Respondent.

_____/

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, providing relevant portions of the state court record.  (Doc. 21).  Petitioner was invited to reply and given several extensions of time to do so.  (Docs. 22, 24, 27, 29).  No reply was filed.  The matter is referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  No evidentiary hearing is required for the disposition of this matter, and petitioner is not entitled to federal habeas relief.

BACKGROUND FACTS[1] AND PROCEDURAL HISTORY

Early the afternoon of February 15, 2005, petitioner broke into George Young's first-floor Tallahassee apartment intending to steal items inside. Petitioner entered by breaking the window and opening the latch. Mr. Young was not home at the time of petitioner's entry but came home while the burglary was in progress. As Young approached his apartment door, he heard noise coming from inside. Young unlocked the door, opened it, stepped inside and immediately noticed his stereo was on the sofa instead of the table, and that his DVDs — once stacked next to the stereo on the table — were scattered on the floor. Young looked behind the door:

> [Y]our subconscious mind tells you no one is there, but I looked anyway, because I knew there had to be something. I knew I heard noise in the house.
>
> And as I looked behind the door, and started basically from the feet up, there was a man behind my door. And about the time that I got up and saw his face, he says, pardon my French, "Oh, shit, I got caught." And at that time, I basically pushed the door in, turned around, and I ran. He chased me out of the apartment saying, "Bitch, now I got to kill you."
>
> And he proceeded to chase me out of the apartment. And not only did he chase me just out of the apartment, he chased me around the apartment building where I ran out of my complex into another

---

[1] The facts are drawn from the evidence presented at trial, viewed in the light most favorable to the prosecution. (Doc. 21, Ex. B (trial transcript)); *see also Jackson v. Virginia*, 443 U.S. 307 (1979).

> complex.  And I didn't see anyone that I could use a phone, so I continued to keep running, because at this time he was chasing me. Don't know when he turned around because I wasn't looking back.  I was trying to get away.

(Doc. 21, Ex. B, pp. 26-27).[2]  Mr. Young kept running – through at least two apartment complexes – until he saw a couple leaving their apartment.  The couple allowed petitioner to use their phone to call 911.  Mr. Young returned to his apartment after police arrived.  By that time, petitioner had returned to Young's apartment and taken the stereo.  Police conducted a preliminary investigation of the scene.  After the police left and Mr. Young was straightening his apartment, he noticed that a plastic shopping bag he placed on the couch the day before now had a large blood stain on it.  The police collected the bag for DNA testing.  The DNA profile of the blood on the bag matched petitioner's DNA profile at all 13 markers. The likelihood of another individual having the same DNA profile was 1 in 3.1 sextillion for Caucasians, 1 in 9.9 quintillion for African Americans, and 1 in 5.7 sextillion for Southeastern Hispanics.

---

[2] All references to exhibits are to those provided at Doc. 21.  Where a page of an exhibit bears more than one page number, the court cites the number appearing at the bottom right corner of the page.

Less than one week after the burglary, Mr. Young was en route to a nearby Kinko's store when he saw the burglar cross the street in front of him. Petitioner did not recognize Mr. Young, but Young immediately recognized petitioner. Young called the police. Young spotted petitioner two subsequent times while out in public and reported those sightings to police as well. A law enforcement investigator eventually contacted Mr. Young and presented him with a photographic lineup. Young identified petitioner as the burglar both in the photo lineup and at trial.

Petitioner was charged in Leon County Circuit Court Case No. 2005-CF-1524, with burglary of a dwelling with person assaulted (Count I), grand theft (Count II) and criminal mischief (Count III). (Ex. A, p. 1). Petitioner went to trial on September 8, 2005, and the jury found him guilty of all counts as charged. (Ex. A, pp. 33-34). The trial court adjudicated petitioner guilty, conducted a sentencing hearing and sentenced petitioner as a Prison Releasee Reoffender to life in prison for the burglary, 5 years in prison (concurrent) for the theft, and time served for the criminal mischief. (Ex. C (sentencing hearing transcript); Ex. A, pp. 54-67 (judgment)). The Florida First District Court of Appeal (First DCA) affirmed on December 8, 2006, per curiam and without opinion. *Gee v. State*, 947 So. 2d 1164 (Fla. 1st DCA 2006) (Table) (copy at Ex. F).

On March 3, 2007, petitioner filed a *pro se* motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a).  (Ex. H, pp. 106).  The state circuit court summarily denied relief (*id*., pp. 16-57), and the First DCA affirmed per curiam without opinion.  *Gee v. State*, 969 So. 2d 1020 (Fla. 1st DCA 2007) (Table) (copy at Ex. I).  The mandate issued December 27, 2007.  (*Id*.).

On July 20, 2007, petitioner filed a *pro se* petition for writ of habeas corpus alleging ineffective assistance of appellate counsel.  (Ex. J).  The First DCA denied the petition on June 16, 2008, and denied rehearing on July 28, 2008.  *Gee v. State*, 986 So. 2d 650 (Fla. 1st DCA 2005) (copy at Ex. J).

On May 14, 2009, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. K, pp. 1-70).  The state circuit court granted an evidentiary hearing and appointed postconviction counsel. (*Id*., p. 103).  After hearing, the circuit court denied relief.  (Ex. L (evidentiary hearing transcript); Ex. K, p. 115 (order denying postconviction relief for reasons announced at hearing)).  The First DCA affirmed per curiam without opinion.  *Gee v. State*, 182 So. 3d 640 (Fla. 1st DCA 2015) (Table) (copy at Ex. O).  The mandate issued January 22, 2016.  (Ex. O).

On November 20, 2015, petitioner filed another *pro se* Rule 3.850 motion alleging newly discovered evidence. (Ex. P, pp. 3-8). The state circuit court summarily denied relief (*id.*, pp. 9-37), and the First DCA affirmed per curiam without opinion. *Gee v. State*, 229 So. 3d 1223 (Fla. 1st DCA 2017) (Table) (copy at Ex. R). The mandate issued March 7, 2017. (Ex. R).

Petitioner filed his federal habeas petition on April 1, 2016, raising two claims. (Doc. 1). Respondent asserts petitioner is not entitled to habeas relief because he fails to meet 28 U.S.C. § 2254(d)'s demanding standard. (Doc. 21).

## SECTION 2254 STANDARD OF REVIEW

Federal courts are precluded from granting a habeas petition on a claim that was adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's factual determinations are presumed correct unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[3]   Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  *See Thaler v. Haynes*, 559 U.S. 43,

---

[3]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

47 (2010); *Woods v. Donald*, 575 U.S. —, —, 135 S. Ct. 1372, 1376 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was *per se* ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants: "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this

Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.  *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004).  The Supreme Court described the "unreasonable application" standard this way:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  *Harrington, supra*, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86 (2011)).  The § 2254(d) standard "is difficult to meet . . . because it was meant to be."  *Richter*, 562 U.S. at 102.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011).  As with the "unreasonable application" clause, the federal court applies an objective test.  *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance."  *Brumfield v. Cain*, 576 U.S. —, —, 135 S. Ct. 2269, 2277 (2015) (quotation marks omitted).

Only if the federal habeas court finds that the petitioner satisfied § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See Panetti*, 551 U.S. at 954.  Even then, the writ will not

issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

## DISCUSSION

Ground One           "Petitioner was denied effective assistance of counsel guaranteed by the Fourth, Fifth Sixth, and Fourteenth Amendments of the United States Constitution when his trial counsel failed to object to or suppress evidence that was not timely disclosed by the State through discovery and/or by a timely request for the trial court to hold a 'Richardson' inquiry on the State's violation of the discovery process as to the admitted evidence."  (Doc. 1, p. 4).

Petitioner alleges that the State did not disclose the blood-stained bag and corresponding DNA test results until the eve of trial.  Petitioner faults trial counsel for failing to challenge the late disclosure.  (Doc. 1, pp. 4-6).

The parties agree that petitioner presented this claim to the state courts in his first Rule 3.850 proceeding; that the state circuit court denied relief on the merits; and that the First DCA summarily affirmed without explanation.  (Doc. 1, pp. 6-7; Doc. 21, pp. 13-14).  The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d).  *See Richter*, 562 U.S. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

A.    Clearly Established Federal Law

An ineffective assistance of counsel claim is considered under the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984).  The *Strickland* standard requires petitioner to show (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.

"Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  466 U.S. at 689.  Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.  The burden to overcome that presumption and to show that counsel's performance was deficient "rests squarely on the defendant."  *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)).

"[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Titlow*, 571 U.S. at 23 (quotation marks and alterations omitted).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different result. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105. As the Court in *Richter* explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must

> guard against the danger of equating unreasonableness under *Strickland*
> with unreasonableness under § 2254(d).  When § 2254(d) applies, the
> question is not whether counsel's actions were reasonable.   The
> question is whether there is any reasonable argument that counsel
> satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

B.     Review of State Court's Decision

Where, as here, there has been one reasoned state judgment rejecting a federal

claim followed by a later unexplained order upholding that judgment, federal habeas

courts employ a "look through" presumption, described by the Supreme Court as

follows: "[T]he federal court should 'look through' the unexplained decision to the

last related state-court decision that does provide a relevant rationale.  It should then

presume that the unexplained decision adopted the same reasoning."   *Wilson v.*

*Sellers*, — U.S. —, 138 S. Ct. 1188, 1192 (2018).

The state circuit court rejected petitioner's claim at the close of the evidentiary

hearing for these reasons:

> The Court has reviewed the Court's recollection of the testimony that
> has been given here today and has also reviewed some portions of the
> trial transcript that was provided to the Court from the trial that was
> conducted in this case.
>
> The Court now finds as follows.  I'll go through each of the
> claims that have been asserted.  As to Claim 2, it's a claim that there
> had been a discovery violation since the defendant claims that he was

not provided with any information regarding a DNA sample until a day or so before the trial, and that the attorney had an obligation to request a Richardson hearing on that alleged discovery violation.

The Court finds that there's no basis for this claim. It is clear from the transcript if you look at page 115 that the defendant was at some time significantly before trial aware of the fact that a DNA sample identifying his blood as having been at the scene of the alleged crime been taken because he was interviewed by Investigator Lewis in regard to this claim that he never did know anything about the address where this thing took place.

And at that time Investigator Lewis advised him that a DNA sample had reflected that his blood with his DNA was located at the scene of the alleged crime, so he had actual knowledge of the existence of that sample some significant period of time prior to trial.

So the court finds – and in addition to that it's clear that he admitted both at trial and again in his testimony today that, in fact, he was aware that his blood was on items in that apartment. So the Court finds there's no merit to that claim.

. . . .

So based on the Court's findings the Court finds that Mr. Gee has not presented a case that would indicate that he was not given sufficient legal counsel or that his counsel failed to take steps to properly represent him or to adequately assert his defenses, so the motion for a [sic] post judgment relief will be denied. . . .

(Ex. L, pp. 237-38, 240).

As the state court found, the trial testimony and postconviction evidentiary hearing testimony establishes that petitioner and defense counsel were aware of the

blood evidence linking petitioner to the crime well in advance of trial.  Investigator Mark Lewis interviewed petitioner after Mr. Young identified him as the burglar in the photo lineup.  (Ex. B, p. 124).  During the interview, petitioner initially told Lewis that he did not know Mr. Young and was never in his apartment.  Lewis then told petitioner that his (petitioner's) DNA was found inside the apartment, and petitioner changed his story to admit he was recently inside Young's apartment.  (*Id*., p. 125).

Defense counsel testified that she was aware early in the case that petitioner's blood was found inside Mr. Young's apartment, and that she was not surprised by the DNA test results confirming that the blood on the bag was petitioner's.  (Ex. L, pp. 191, 204).  Counsel explained that the blood-stained bag was referenced in the police report; that the investigator told petitioner his DNA was found in the apartment; and that petitioner did not dispute his blood was in the apartment.  (Ex. L, pp. 191-96, 204).  In fact, the blood evidence was what drove petitioner's choice of defense, namely, to admit that he was in petitioner's apartment, but provide a different date and reason for his presence, and a different explanation for his blood being there.  Consistent with this defense strategy – prepared well in advance of trial – petitioner testified at trial that he met Mr. Young on the street a few days prior to

the burglary; that petitioner had just gotten into a fight and was bleeding; that Mr. Young invited petitioner to his home and gave him a meal; that petitioner left after the meal; and that petitioner did not steal anything from Mr. Young on that or any other occasion. (Ex. B, pp. 110-14 (petitioner's trial testimony); Ex. L, pp. 191-98 (trial counsel's postconviction evidentiary hearing testimony explaining petitioner's defense strategy and the reasons behind it)).

Defense counsel also testified that she knew she would not receive the State's DNA test results until right before trial, because the State had sought a continuance a week before trial based on a delay in testing. (Ex. L, p. 204; *see also* Ex. A, p. 27 (State's motion for a continuance dated August 31, 2005, noting defense counsel's objection); Ex. A, p. 28 (order denying a continuance)). Nonetheless, defense counsel and petitioner were prepared that the test results would implicate petitioner. (Ex. L, pp. 191-92).

Based on the record, the state court's rejection of petitioner's claim was not contrary to and did not involve an unreasonable application of *Strickland*, because petitioner failed to meet his high burden to show that counsel's failure to raise a discovery violation was deficient performance and that he was prejudiced by that failure. *See Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir. 1994) ("[I]t is

axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."); *Freeman v. Attorney Gen. Fla*., 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . ."). Petitioner is not entitled to federal habeas relief on Ground One.

Ground Two          "Petitioner was denied effective assistance of counsel in violation of his Fifth Sixth, and Fourteenth Amendments that guaranteed under the United States Constitution when his trial counsel failed to investigate forensic evidence procedures and DNA testing."  (Doc. 1, p. 7).

Petitioner faults trial counsel for failing to investigate and challenge the State's collection of a DNA sample from him via a buccal swab.  Petitioner contends counsel should have objected on these bases:  (1) Investigator Mark Lewis assisted in obtaining the sample, which was improper because Lewis was not a forensic technician and was directly involved in the investigation of the case, "which weighs to the probability of tampering with evidence by law enforcement officers"; (2) the buccal swab was collected without first determining whether petitioner's DNA was in the CODIS database;[4] (3) trial witnesses' descriptions of the blood stain on the shopping bag differed, which indicates evidence tampering.  (Doc. 1, pp. 7-8).

---

[4] CODIS is the acronym for the Federal Bureau of Investigation's Combined Offender DNA Index System.  This system "allows the storage and exchange of DNA records submitted by federal, state, and local forensic DNA laboratories."  Fla. Stat. § 943.325(2)(b).

Petitioner states: "it is a high probability that the State never had any evidence against the Petitioner and needed a DNA sampling to fraud the Petitioner and Court for an offense unsupported by factual evidence, that he did not commit." (*Id*., p. 8).

The parties agree that petitioner presented this claim to the state courts in his first Rule 3.850 proceeding; that the state circuit court denied relief on the merits; and that the First DCA summarily affirmed without explanation. (Doc. 1, p. 10; Doc. 21, pp. 14-15). The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 100.

A.    Clearly Established Federal Law

The clearly established federal law governing this claim is the *Strickland* standard outlined above.

B.    Review of State Court's Decision

Because the First DCA's summary affirmance was unexplained, the court looks through the unexplained decision to the state circuit court's rationale. *See Wilson*, 138 S. Ct. at 1192. The state circuit court rejected petitioner's claim at the close of the evidentiary hearing for these reasons:

> The last claim to be dealt with is Claim 10 and it's similar to the one in Claim 2 that the attorney failed today [sic] make an objection as

to Investigator Lewis having procured the DNA sample from the defendant. The Court finds that that claim is also totally without merit.

So based on the Court's findings the Court finds that Mr. Gee has not presented a case that would indicate that he was not given sufficient legal counsel or that his counsel failed to take steps to properly represent him or to adequately assert his defenses, so the motion for a [sic] post judgment relief will be denied. . . .

(Ex. L, p. 240).

The state court had a reasonable basis to conclude that counsel was not ineffective. Trial counsel testified at the postconviction evidentiary hearing that petitioner never told her he suspected his DNA sample was manipulated by law enforcement. (Ex. L, p. 203). Contrary to petitioner's allegation, the trial transcript establishes that it was Marvin Tubbs, a forensic specialist with the Tallahassee Police Department, who collected the DNA sample from petitioner, not Investigator Lewis. (Ex. B, pp. 60-61). Counsel also testified that the State had a right to ask for a DNA sample, so there was no valid legal challenge she could make. (*Id.*, p. 197). Florida law confirms counsel's testimony. *See* Fla. Stat. § 943.325; Fla. R. Crim. P. 3.220. Moreover, counsel affirmed that it is common for the State to take a DNA sample from a defendant even when the CODIS database shows a match, to ensure "chain of custody is cleaned up". (*Id.*, p. 197). Counsel saw no advantage to, or

arguable basis for objecting to the collection of the sample, challenging the collection procedure, or seeking suppression of the evidence developed from the sample. *See Bolender, supra*; *Freeman, supra*. Petitioner's proposed conspiracy/evidence tampering theory – a theory he did not communicate to counsel – has no record support. *See Chandler v. United States*, 218 F.3d 1305, 1324 (11th Cir. 2000) ("The reasonableness of a trial counsel's acts, including lack of investigation . . ., depends critically upon what information the client communicated to counsel."). Petitioner's attempted showing of prejudice fails not only because the proposed objection lacks merit, but because his theory of defense conceded he was in the apartment and bleeding, and he admits his DNA profile was in the CODIS database due to his prior convictions.

The state court's rejection of petitioner's ineffective assistance claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard. Petitioner is not entitled to federal habeas relief.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is

issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'"  *Miller-El*, 537 U.S. at 336 (*quoting* 28 U.S.C. § 2253(c)).  "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 774 (2017) (*quoting Miller-El*, 537 U.S. at 327).  The petitioner here cannot make the requisite showing.  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  28 U.S.C. § 2254 Rule 11(a).  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.   That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Jerome Gee*, Leon County Circuit Court Case No. 2005-CF-1524, be DENIED.

2.  That the clerk be directed to close the file.

3.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 16th day of August, 2018.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.